```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF KENTUCKY
                     CENTRAL DIVISION at LEXINGTON

UNITED STATES OF AMERICA,      )
                               )
Plaintiff,                     )   Action No. 5:14-CR-112-JMH
                               )
v.                             )
                               )
                               )
RUBEN DARIO                    )
VELAZQUEZ-NEGRETE,             )
                               )
 aka RUBEN VELAZQUEZ-NEGRETE   )   MEMORANDUM OPINION
 aka RUBEN SALINAS-DARIO       )
 aka RUBEN DARIO               )
 aka LUIS SALINAS              )
 aka JASIEL CORTEZ             )
                               )
Defendant.                     )

                       **   **   **   **   **
```

This matter is before the Court upon the government's motion in limine to prohibit Defendant from offering evidence to establish a duress defense to his prosecution for illegal reentry into the United States in violation of 8 U.S.C. § 1326. [DE 43]. The Court granted this motion during the pretrial conference conducted on February 25, 2015, *see* Docket Entry 48, and this opinion shall supplement the ruling made from the bench.

### I. BACKGROUND

In a pretrial proffer of evidence, Defendant testified that while living in Oaxaca, Mexico, he was shot multiple times and nearly kidnapped by unknown assailants. As for the motivation

behind the attack, Defendant explained that because he previously had been deported from the United States, his assailants thought he had money. He subsequently was hospitalized, during which time his mother arranged for police officers to protect him. After his release from the hospital, he moved to Puebla—about twelve hours away. There, he purchased a piece of land and a house, where he lived for three or four months. He testified that, at that point, his neighbors began telling him that he was being watched and that it would be best for him to leave, so he sold his property and came to the United States illegally in July or August of 2009.

Defendant testified that when he was deported to Mexico earlier in 2009, he thought he would not come back to the United States because he knew he would be punished. He decided to return, however, due to his fear from the attack and because he had family in the U.S., including a sister and cousins. He could not go to the police in Mexico and try to have the individuals prosecuted because, in Mexico, if you report these people, "they kill your family, they kill your children. They don't care about anything." Defendant testified that such acts occur in his state in Mexico all the time and that, in fact, his uncle was shot and killed two years ago in the same town in which he resided. He could not flee to Guatemala, which borders

Mexico to the south, because it is similar to Mexico. "[I]n Mexico, there is no justice. You go to the police and they kill you. In the United States, you come here and they don't accept money. You come here and there is less . . . discrimination. Here you feel . . . more protected. . . . And so I decided to come here."

Once Defendant crossed the border, his cousin picked him up just outside of Phoenix. He told no one other than his family members about the attack that had occurred in Oaxaca. He did not seek out an immigration officer or the police once in the United States because he had already been deported and knew he would be deported again. He also did not seek the advice of an attorney regarding asylum or any other relief that might be available. Defendant stated that staying in the United States was safer than returning to Mexico or going anywhere else because he came to the U.S. when he was only fourteen years old and he has lived here the majority of his life and that he just feels safer here. He added that the threat he faces in Mexico is ongoing because the people who attacked him "never stop looking for you." Defendant's presence in the country remained unknown to law enforcement until he was arrested in Versailles, Kentucky in September 2014.

3

## II.  DISCUSSION

A defendant is not entitled to present a defense to a jury unless the defendant provides evidence that "meet[s] a minimum standard as to each element of the defense so that, if a jury finds it to be true, it would support an affirmative defense." *United States v. Capozzi,* 723 F.3d 720, 725 (6th Cir. 2013) (quoting *United States v. Bailey,* 444 U.S. 394, 415 (1980)).  To establish a prima facie case of duress or necessity, a defendant must present some evidence to establish:

> (1) that defendant was under an unlawful and present, imminent, and impending threat of such a nature as to induce a well-grounded apprehension of death or serious bodily injury;
>
> (2) that the defendant had not recklessly or negligently placed himself in a situation in which it was probable that he would be forced to choose the criminal conduct;
>
> (3) that the defendant had no reasonable, legal alternative to violating the law, a chance both to refuse to do the criminal act and also to avoid the threatened harm;
>
> (4) that a direct causal relationship may be reasonably anticipated between the criminal action taken and the avoidance of the threatened harm; and
>
> (5) that the defendant did not maintain the illegal conduct any longer than absolutely necessary.

*Id.*  Additionally, a defendant must "proffer evidence of a bona fide effort to surrender . . . as soon as the claimed duress or necessity ha[s] lost its coercive force."  *United States v.*

*Portillo-Vega,* 478 F.3d 1194, 1201 (10th Cir. 2007) (quoting *Bailey,* 444 U.S. at 415) (alterations added).

Although the Supreme Court's decision in *Bailey,* 444 U.S. 394, discussed the elements of a duress or necessity defense in the context of criminal escape, the court agrees with the Tenth Circuit's decision in *Portillo-Vega,* 478 F.3d at 1201, that the "bona fide effort to surrender" requirement is equally applicable in the context of illegal re-entry after deportation in violation of 8 U.S.C. § 1326. Just as escape is a continuing offense, so is illegal re-entry after having been deported. *See United States v. Jimenez,* 605 F.3d 415, 422 (6th Cir. 2010) (abrogated on other grounds by *Tapia v. United States,* 131 S.Ct. 2382 (2011)); *see also United States v. Santana-Castellano,* 74 F.3d 593, 598 (5th Cir. 1996). Defendant admitted that, in the five years he lived in the United States illegally, he made no effort to contact law enforcement officers because he feared he would be deported to Mexico. His testimony also indicates that during his interview with Agent Phelps in September 2014, he did not express fear about returning to Mexico. Regardless of whether Defendant has proffered sufficient evidence on the first four elements of a duress instruction, he has failed to put forth any evidence that he maintained the illegal conduct no longer than absolutely necessary or that he made a bona fide

effort to surrender to authorities. Accordingly, he is not entitled to a jury instruction on a duress or necessity defense.

**IT IS SO ORDERED.**

This the 3rd day of March, 2015.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge